# EXHIBIT D

## MASTER STAFFING AGREEMENT

This Master Staffing Agreement dated as of March 23, 2015 (the "Effective Date") is made between the Federal Reserve Bank of New York, a United States corporation located at 33 Liberty Street, New York, New York 10045 (the "Bank"), and Source of Future Technology, Inc., a New York State corporation located at 333 Hudson Street, Suite 202, New York, NY 10013 (the "Vendor").

From time to time, the Bank supplements its workforce with temporary contract labor (collectively "Contingent Workers"). The Vendor employs individuals whom the Vendor assigns to fill positions for temporary contract labor. The Bank desires to engage the Vendor on a non-exclusive basis to provide Contingent Workers, and the Vendor is willing to assign qualified Contingent Workers to the Bank.

The parties therefore agree as follows:

**1.     Work Orders**

1.1     **Assignments under this Agreement.** This Agreement is a master agreement under which the Bank may contract for assignment of Contingent Workers from time to time while the Agreement continues in effect. Each assignment of a Vendor employee to provide services to the Bank under this Agreement is to be memorialized in a completed Work Order. For the purposes of this Agreement, a "Work Order" shall be issued through either an electronic requisition process to document Contingent Worker assignments or in the form attached to this Agreement as Exhibit A. The Vendor acknowledges and agrees that any offer to engage a Contingent Work communicated either in writing or through the electronic requisition process will be a conditional offer made subject to acceptance by the Bank as further described in section 2.6 of this Agreement.

1.2     **Nonexclusive.** This Agreement is nonexclusive; the Bank may use other suppliers of temporary labor. The Bank has no obligation to enter into any Work Order under this Agreement or to make any payments to the Vendor except for the performance of services by a Contingent Worker pursuant to a Work Order.

1.3     **Additional Requirements for Certain Positions.** From time to time the Bank may fill certain professional or paraprofessional positions, *e.g.*, medical and legal, with temporary contract labor, and those positions may be subject to additional requirements. Additional requirements for such positions are set forth in one or more Addenda that the parties may agree to add to this Agreement. If the Vendor fills a position that is the subject of an Addendum, the additional requirements set forth in the applicable Addendum shall apply to the assignment.

1.4     **Separate Contracts for Services.** Each Work Order, together with the terms and conditions of this Agreement, including any applicable Addenda, will constitute a separate contract for services effective when the Work Order is accepted by the Bank through the electronic requisition process or, if in written form, executed by authorized representatives of the parties.

1.5     **Precedence.** If a Work Order conflicts or is inconsistent with this Agreement, the terms of the Work Order are to control with respect to the assignment that is the subject of the Work Order. A Work Order may not otherwise amend or waive any provision of this Agreement or any other Work Order.

**2.     Process for Request and Acceptance of Contingent Workers**

2.1     **Requisition.** The Bank is to establish the minimum qualifications the Bank determines necessary for the services to be performed by temporary contract labor. If the Bank desires to consider an

Page 1 of 27

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000313

individual to be assigned by the Vendor to fill a temporary position, the Bank will, directly or through its Managed Service Provider (further described in section 2.7) provide the Vendor a requisition describing the work to be performed: the skills, experience, and other qualifications required by the Bank; the location of the Bank facility at which the work is to be performed; and the expected start and end dates for the assignment. The Bank will also attach to the requisition, any license, registration, certification, and insurance requirements that must be satisfied by the Vendor and candidates of the Vendor for certain services sought by the Bank that are regulated by federal, state or local laws. When the Bank includes such requirements in its requisitions, the Vendor shall only propose candidates who satisfy the additional requirements.  The Bank will also indicate in the requisition whether the Bank intends to pay for services on a time and materials basis and, if so, the corresponding pay rate, or on a fixed fee (project) basis and, if so, the fixed fee amount.  The Bank may limit the time for response to a requisition.

2.2   <u>Candidates</u>.  The Vendor may propose one or more candidates to fill an assignment.  The Vendor may propose only candidates that are employed by the Vendor. The Bank will not consider, and the Vendor shall not propose "contractor candidates" for assignments under this Agreement.  Furthermore, the Vendor shall not propose candidates who would be assigned under subcontracts with other staffing firms, *i.e.*, "corp-to-corp" assignments. The Vendor shall propose only candidates the Vendor believes in good faith possess skills, experience, and qualifications responsive to the requisition, are reliable and of reputable background and sound character. and are legally authorized to work in the United States.

2.3   <u>Proposal</u>.  To propose a candidate, the Vendor shall submit the candidate's resume with a proposal from the Vendor that (a) confirms the Vendor will make the assignment on the terms set forth in the Bank's requisition or specifies any changes to the assignment terms the Vendor would require, and (b) confirms the Vendor has informed the candidate of the Bank's requirements identified in article 5 of this Agreement and determined the candidate is willing to abide by the Bank's requirements.

2.4   <u>Interviews</u>.  At the Bank's request, the Vendor shall make candidates available for one or more Bank interviews, which may be conducted by telephone or in person.

2.5   <u>Background Checks</u>.  The Vendor acknowledges and agrees that Contingent Workers assigned to perform services for the Bank will be subject to the Bank's security rules and procedures including, without limitation, one or more background checks.

    a.   Any Contingent Worker to which the Bank may give physical access to Bank facilities or access to any information system or nonpublic information will be subject to background checks by the Bank including, without limitation, criminal background checks, drug testing, fingerprinting, credit history checks, and prior-employer reference checks prior to receiving such access.  The Bank may perform background checks at any time before or after a Contingent Worker begins an assignment for the Bank. The Vendor acknowledges that Contingent Workers assigned to certain positions may be subject to enhanced background investigations and additional personnel requirements imposed by law, regulation, or order, by the Board of Governors of the Federal Reserve System, or by any government agency or organization for which the Bank acts as a fiscal agent. When the Bank includes such requirements in its requisitions, the Vendor shall only propose candidates who satisfy the additional requirements and are willing to undergo enhanced background investigations.

    b.   The Vendor agrees to cooperate with the Bank, and to cause Contingent Workers and candidates to cooperate with the Bank, to complete background checks.  If the Vendor determines that notice to, or consent of, any Contingent Worker or candidate is necessary or advisable prior to the Vendor's disclosure of individual information to the Bank, the Vendor will give such notice or obtain such consent.  The Vendor represents and warrants to the Bank as of the time it provides

Page 2 of 27

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000314

any individual information to the Bank (or to any Bank agent or representative) that the Vendor is authorized to provide such information for the purposes set forth in this section 2.5 and has given any notice or obtained any consent that may be required as a condition of such disclosure.

c. The Vendor acknowledges and agrees that any security-related issues concerning any Contingent Worker or candidate may, in the sole judgment of the Bank, constitute grounds for the Bank to deny access to, or remove the Contingent Worker or candidate from, the Bank at any time. The Bank shall not be obligated to inform the Vendor of the specific results of any background investigation. The Bank also shall not be obligated to inform a Contingent Worker or candidate of the specific results of a background investigation unless, and then only to the extent, disclosure is expressly required by law.

2.6     Acceptance. The Bank, in its sole discretion, may accept or reject any candidate proposed by the Vendor. The Bank may notify the Vendor orally, through the electronic requisition system, or in writing of its intention to accept a candidate proposed by the Vendor. Notice of acceptance does not constitute a contract between the parties for the services of the candidate. The candidate will be formally accepted by the Bank as a Contingent Worker when (a) a completed Work Order is accepted by the Bank through the electronic requisition process or, if in written format, signed by authorized representatives of the parties; (b) the Bank has received the Vendor's written certifications of the employment status of Contingent Worker and compliance with Service Contract Labor Standards in the current form attached to this Agreement as Exhibit B or in such revised form as the Bank may require from time to time; and (c) the Bank has completed a background check of the Contingent Worker with results satisfactory to the Bank. The Vendor acknowledges that commencement of the assignment is also subject to the Contingent Worker completing the Bank's on-boarding process.

2.7     Managed Service Provider. The Bank uses a managed service provider ("Managed Service Provider") to manage the Bank's relationships with its suppliers of temporary contract labor. The Managed Service Provider acts as the Bank's agent to submit requisitions and receive proposals for Contingent Workers and to coordinate the interview and selection process, billing and payment of supplier fees, communications regarding Contingent Workers, and on-boarding and off-boarding procedures. The Managed Service Provider is also responsible for reviewing proposals for Contingent Workers submitted by the Vendor in order to determine if a candidate meets the minimum criteria set forth in a requisition, however, the Managed Service Provider does not have authority to select the Contingent Workers that the Bank accepts for an engagement. The Vendor acknowledges and agrees that the Bank may require the Vendor to register with, and use system and tools provided by, the Bank's Managed Service Provider to supply Contingent Workers to the Bank under this Agreement. The Vendor further acknowledges that the Managed Service Provider may require, as a condition to registration and use of its system and tools, that the Vendor enter into an agreement with the Managed Service Provider, the Bank will not be a party to such agreement, and the Vendor is solely responsible for its obligations under such agreement and its use of the Managed Service Providers system and tools.

3.      Fees and Expenses

3.1     Fees to be Specified in Work Orders. The fees payable by the Bank to Vendor for a Contingent Worker assigned to provide services to the Bank will be as set forth in the applicable Work Order. A Work Order may provide for fees to be paid on a time and expenses basis or on a fixed fee (project) basis.

a. If the Vendor is to be paid on a time and expenses basis, fees will be payable for hours actually worked during the term of the Work Order at the rate set forth in the Work Order. Daily rates are for an eight-hour work day, and weekly rates are for a forty-hour work week, excluding lunch and any breaks during the work day. Daily and weekly fees will be prorated for partial days and

Page 3 of 27

DM #55439

CONFIDENTIAL

partial weeks worked. Payments to the Vendor will be made on a weekly basis unless otherwise specified in the Work Order. The Bank will have no obligation to pay the Vendor for overtime charges unless the Vendor is required by law to pay overtime rates to a Contingent Worker and the Bank has approved overtime work in advance in writing. The Bank has no obligation to pay the Vendor for overtime charges the Vendor incurs in any other circumstances. The Vendor agrees that any overtime bill rates will be calculated in accordance with the provisions set forth in section 3.1(b) below.

b.   In the event the Vendor is required to pay overtime rates as provided in section 3.1(a) above, the pay rate and bill rate will be as follows. "Overtime" means the hours worked by the Contingent Worker in excess of 40 hours in any one Work Week. "Work Week" means any seven consecutive days, starting with the same calendar day each week or as a fixed a regularly recurring period of 168 hours, seven consecutive 24-hour periods. Overtime hours, if any, shall be payable at a pay rate of 1.5 times the straight time hourly pay rate for the affected Contingent Worker. The Overtime hourly bill rate payable by the Bank to the Vendor will be 1.4 times the corresponding straight time bill rate.

c.   In the event the Vendor is not required to pay overtime rates as provided in section 3.1(a) above, then the Overtime hourly bill rate payable by the Bank to the Vendor will be 0.9 times the corresponding straight time bill rate for the affected Contingent Worker.

d.   If the Vendor is to be paid a fixed fee for the project, the fee will be paid (i) in full following completion of the project and project deliverables by the Contingent Worker and written acceptance by the Bank or (ii) in installments following completion of project milestones by the Contingent Worker and written acceptance of the applicable project milestones by the Bank. The project requirements, deliverables and, if payments are to be made in installments, the relevant project milestones, will be described in the applicable Work Order.

e.   Fees payable under a Work Order shall not exceed the Total Cost set forth in the Work Order unless an authorized representative of the Bank has approved a request for additional funding of a Work Order.

3.2     Travel Expenses. If the Bank requests that a Contingent Worker perform services at a location other than the location set forth in the Work Order and such other location is beyond a reasonable commuting distance from the Contingent Worker's primary residence, the Bank may agree to reimburse the Vendor for the cost of the Contingent Worker's travel to the alternate location. Travel expenses must be approved in advance by the Bank in writing, and the Bank will reimburse the Vendor for the actual cost (without mark-up) of approved expenses in accordance with the Bank's Travel and Discretionary Expenditures Policy then in effect. Written approval for travel anticipated at the outset of the assignment is to be made by including the travel requirements in the applicable Work Order.

3.3     No Other Expenses. Except travel expenses described in section 3.3, the Bank has no obligation to pay any expenses or costs incurred by the Vendor or the Contingent Worker to perform services for the Bank.

3.4     Invoices.

a.   Unless otherwise provided in the applicable Work Order, the Vendor shall issue invoices weekly in arrears for each Contingent Worker assignment. Subject to section 3.4(b), the Vendor shall submit invoices for services performed under this Agreement to the Managed Service Provider in accordance with the Managed Service Provider's billing procedures then in effect.

Page 4 of 27

DM #55439

CONFIDENTIAL

b. The Bank may require the Vendor to submit invoices directly to the Bank in lieu of submitting invoices through the Managed Service Provider. In that event, the Vendor shall send invoices to the Bank by e-mail addressed to accounts.payable@ny.frb.org or by mail addressed to the Federal Reserve Bank of New York, 100 Orchard Street, East Rutherford, NJ 07073, Attention: Accounts Payable or to such email or mailing address as the Bank directs in writing. Each Vendor invoice must include a Vendor invoice number, the name of the Bank department and business owner responsible for the Agreement, the Bank's four-digit accounting/budget code, and detail sufficient to identify the Work Order and services covered by the invoice.

3.5    Payment. If the Vendor submits invoices through the Managed Service Provider, the Vendor will receive payment from the Managed Service Provider. If, at the Bank's request, the Vendor submits invoices directly to the Bank, the Vendor will be paid directly by the Bank. In either case, payment will be due 30 days after the Bank's receipt, through the Managed Service Provider or directly, as applicable, of a proper invoice. In the event either the Managed Service Provider or the Bank remits payment to Vendor within 30 days of receipt. Vendor shall provide the Bank with a two percent (2%) discount from the total amount of the invoice due. If the Bank disputes all or a portion of any invoice, the Bank shall notify the Vendor in writing of the specific reason for, and amount of, the dispute and pay the undisputed amount. The Vendor and the Bank shall work together in good faith to resolve the dispute. If resolution of any payment dispute includes reduction of any invoiced amount, the Vendor shall issue to the Bank promptly after the dispute is resolved a credit memo or similar acknowledgment. The Vendor expressly acknowledges that nothing in this section 3.5 affects the Vendor's obligation to pay wages or other amounts to Contingent Workers as required by law or under contract between the Vendor and the Contingent Worker.

3.6    MSP Payment Instructions. To facilitate payment by the Managed Service Provider, the Vendor agrees to provide the Managed Service Provider any information or documentation reasonably requested by the Managed Service Provider, including payment instructions.    The Vendor acknowledges that payment by the Managed Service Provider in respect of Contingent Worker assignments satisfies the payment obligations of the Bank under this Agreement for the corresponding assignments.

3.7    Bank Payment Instructions. At the Bank's request, the Vendor shall provide to the Bank a completed Supplier Profile Form and ACH Payment Authorization Form, copies of which will be supplied by the Bank to the Vendor. The ACH Payment Authorization Form includes the Vendor's written payment instructions the Bank would use to make direct Vendor payments by electronic funds transfer. The Vendor may update any supplier profile information provided to the Bank, including changing or revoking the Vendor's payment instructions, by submitting an updated Supplier Profile Form and/or ACH Payment Authorization Form to the Bank. In addition, the Bank may require the Vendor to submit an updated Supplier Profile Form and ACH Payment Authorization Form if the Bank has not made a payment to the Vendor within the previous twelve months. The Vendor shall submit updated Supplier Profile Forms and ACH Payment Authorization Forms by e-mail addressed to accounts.payable@ny.frb.org. The Bank is not liable for any payment to be made by the Bank that is delayed or misdirected as a result of the Vendor's failure to provide a properly completed Supplier Profile Form and ACH Payment Authorization Form or any inaccuracies in the completed forms. The Bank must have a reasonable time after receiving an updated Supplier Profile Form or ACH Payment Authorization Form to act on the updated form.

3.8    Payment Agent. For invoices to be paid directly by the Bank, the Bank may process vendor payments through the Federal Reserve Bank of Dallas. The Vendor acknowledges and agrees that the Bank may provide the Vendor's supplier profile information, payment instructions, and invoice information to the Federal Reserve Bank of Dallas. The Bank may direct the Vendor to send invoices,

DM #55439

CONFIDENTIAL

Confidential

FRBNY_Nguedi_000317

Supplier Profile Forms and ACH Payment Authorization Forms directly to the Federal Reserve Bank of Dallas. Payment made by the Federal Reserve Bank of Dallas to the Vendor constitutes the Bank's payment under this Agreement. The Federal Reserve Bank of Dallas may aggregate payments to the Vendor under this Agreement with amounts it pays to the Vendor on behalf of other Federal Reserve Banks.

3.9     Tax Exempt Status. The Bank is exempt from all federal, state, and local taxes, except real estate taxes, under section 7 of the Federal Reserve Act (12 U.S.C. § 531). Accordingly, the Vendor shall not charge the Bank for any federal, state, or local taxes from which the Bank is exempt, including sales and use taxes.

## 4.     The Vendor's Responsibilities

4.1     Service Contract Labor Standards Laws.

    a.   This Agreement is subject to the provisions of the Service Contract Labor Standards Law, 41 U.S.C. 6701-6707 (formerly codified as the Service Contract Act of 1965) (the "Act") and the regulations promulgated thereunder, 29 C.F.R. Part 4 (the "Regulations"). The contract clauses set forth in 29 C.F.R. § 4.6 are incorporated by this reference and made a part of this Agreement.

    b.   The Vendor agrees that it will ensure all of its employees who provide services to the Bank pursuant to this Agreement will be paid the minimum required rates and provided the minimum required benefits in accordance with the Act and the Regulations, and the Vendor shall otherwise comply with the requirements of the Act and the Regulations.

    c.   A currently effective wage determination notice will be attached to each Work Order providing the required wage rates corresponding to the services to be performed under the Work Order unless the Vendor has determined that the Contingent Worker to be assigned is exempt from the requirements of the Act. If the Vendor determines that a Contingent Worker is exempt from the requirements of the Act, the Vendor will represent and warrant to the Bank in the applicable Work Order that such an exemption applies.

4.2     Vendor's Employment-Related Obligations.

    a.   The Vendor shall employ any individual supplied to the Bank as a Contingent Worker under this Agreement. The Bank may request, and upon request the Vendor shall provide to the Bank, satisfactory evidence that:

        (i)   individuals assigned to perform services for the Bank are employees of the Vendor; and

        (ii)  all federal, state, and local taxes required to he withheld or paid on behalf of employees have been withheld from the Contingent Workers and paid as required by the Vendor to the appropriate taxing authority.

    b.   The Vendor acknowledges and agrees that Contingent Workers are not employees of the Bank, but are employees of the Vendor within the meaning and application of all federal, state, and local tax, unemployment insurance, workers' compensation, employment, wage, labor, occupational safety, civil rights, immigration, benefit, and other related laws, regulations, and government requirements (collectively, "Employment Laws"). The Vendor agrees that the Vendor is solely responsible for all obligations and liabilities

DM #55439

CONFIDENTIAL

Confidential

FRBNY_Nguedi_000318

imposed by any Employment Law with respect to the Contingent Workers, whether or not expressly identified in this paragraph.

c.   The Vendor shall indemnify and hold the Bank, its officers, employees, and agents, harmless from all liability, loss, cost, damage, penalties, and expense (including fees of attorneys and other professional advisors) resulting from any suit, claim, proceeding, or investigation asserted or undertaken against the Bank or any of its officers, employees, or agents alleging any obligation of the Bank under, or failure of the Bank to comply with, any Employment Law or any misclassification of workers under any Employment Law, as such Employment Law relates to any Contingent Worker.  The Vendor shall also indemnify and hold the Bank harmless from any penalties assessed against the Bank by the U.S. Citizenship and Immigration Services or by any other federal, state, or local government entity with regard to hiring or use of workers who are not legally authorized to work in the United Sates, as well as any legal fees incurred by the Bank in defense of any related investigation by any branch of the United States government.  If the Internal Revenue Service, state departments of revenue or taxation, or any other government entity questions or challenges the employment status of any Contingent Worker, the Vendor agrees that the Bank shall have the right, but not the obligation, to participate in any discussion or negotiation with such government entity irrespective of the manner in which the discussion or negotiation is initiated.

d.   The Vendor shall communicate to all Contingent Workers and candidates proposed to the Bank that (i) the Vendor and not the Bank is the Contingent Worker's employer; (ii) the Bank is the Vendor's customer; (iii) the Contingent Worker is only on assignment to the Bank; and (iv) the Contingent Worker is not eligible to receive or participate in any Bank or Federal Reserve System benefits, including, without limitation, retirement, thrift, and health plans and vacation and other leave programs.

e.   Subject to the Vendor's obligations under the Act, the Vendor shall provide to each Contingent Worker all benefits, if any, the Vendor provides to similarly-situated Vendor employees in a manner consistent with the Vendor's benefit policies and procedures.  In no event shall a Contingent Worker be eligible to participate in any Bank or Federal Reserve System benefit plan or program.

4.3   Insurance.   The Vendor shall purchase and maintain insurance sufficient in form and amount to protect the Bank from any claims which may arise out of, or result from, the services to be performed by the Vendor and Contingent Workers under this Agreement.  Without limiting the insurance requirement, the Vendor shall purchase and maintain the following minimum insurance coverage in such form and with such companies as are acceptable to the Bank:

a.   Workers' compensation and employer's liability insurance as required by law; and

b.   Commercial general liability insurance with limits of not less than $1,000,000 for bodily injury, including death, to any one person, and $2,000,000 for each accident, and not less than $1,000,000 for each occurrence of property damage; and

c.   Professional liability/errors & omissions insurance with limits of not less than $1,000,000 for each claim for damages, claim for expenses (e.g. defense costs), and supplemental payments and $1,000,000 in the aggregate.

Page 7 of 27

DM #55439

CONFIDENTIAL

The Vendor shall, upon the Bank's request, provide insurance certificates which evidence the minimum coverage is in effect and maintained throughout the term of the Agreement and identify the Bank as an additional insured or loss payee as its interests may appear. The Vendor shall also obtain from its insurance companies an endorsement warranting that coverage shall not be cancelled, non-renewed, or materially changed without 30 days' prior notice to the Bank, and shall forward a copy of the endorsement to the Bank upon request. The Vendor's compliance with the requirements of this insurance provision does not limit or relieve the Vendor's liability under this Agreement.

4.4     <u>Confidential Information.</u>

a.   "<u>Confidential Information</u>" means all of the following: (i) any nonpublic information provided to or received by the Vendor or to which the Vendor has access in connection with this Agreement; (ii) any information about the Bank's request for any services under this Agreement; (iii) any Work Product (as that term is defined in Section 7.1) created under this Agreement; (iv) any personally identifiable information that may be provided to the Vendor in connection with this Agreement ; and (v) the existence of this Agreement and any information about the terms and subject matter of this Agreement. Confidential Information does not include information that (1) is or becomes generally known to the public through no breach of this Agreement by the Vendor or any Contingent Worker assigned by the Vendor to perform services for the Bank; (2) is rightfully known by the Vendor and not subject to another confidentiality obligation to any person or entity, including the Bank; (3) is independently developed by employees of the Vendor who do not have access to any of the Bank's Confidential Information; or (4) is information the Bank expressly agrees in writing is not confidential.

b.   Confidential Information may be used by the Vendor and Contingent Workers solely for the benefit of the Bank and administration of this Agreement and the Vendor's operations as they relate to this Agreement. The Vendor shall not duplicate, use, or disclose Confidential Information to any person without the Bank's prior written consent other than to Vendor's employees, officers, and directors who have a need to know the Confidential Information. The Vendor may, however, disclose Confidential Information: (i) pursuant to an order of a court, administrative agency, or other governmental body if the Vendor gives the Bank notice sufficient to allow the Bank an opportunity to contest the order unless the Vendor is prohibited by law from giving such notice; (ii) to its attorneys and auditors whose professional standards require them to keep in confidence the Confidential Information; and (iii) as otherwise required by law, in which case the Vendor shall give the Bank notice of the disclosure when it is made. If the Vendor is required to disclose any Confidential Information as provided in the immediately preceding sentence, the Vendor shall take reasonable steps to assure that the Confidential Information is accorded confidential treatment by the recipient.

c.   The Vendor acknowledges and agrees that Contingent Workers assigned to the Bank may be given access to Confidential Information subject to nondisclosure restrictions that preclude the Contingent Worker from sharing the Confidential Information with the Vendor. The Bank may require Contingent Workers to sign nondisclosure agreements directly with the Bank. The Vendor will respect the obligation of Contingent Workers regarding Confidential Information and impose no requirements on Contingent Workers contrary to such obligations.

d.   The Vendor shall inform all persons to whom it discloses Confidential Information as permitted in this Agreement of the confidential nature of the information and the restrictions on its use and disclosure, and the Vendor shall require those individuals to abide by such restrictions. In addition, if the Vendor provides any Confidential Information to any person who is not an

DM #55439

CONFIDENTIAL

employee of the Vendor, the Vendor shall require such person to agree in writing to the same restrictions and conditions on use and disclosure of the Confidential Information as are imposed on the Vendor by this Agreement.

e.  The Vendor shall protect the Confidential Information according to commercially reasonable standards and no less diligently than the care it exercises to prevent unauthorized use or disclosure of its own most sensitive confidential information.  The Vendor shall implement, maintain, and use appropriate administrative, technical, and physical security measures to preserve the confidentiality, integrity, and availability of Confidential Information.

f.  If Confidential Information is used or disclosed in any manner not permitted by this Agreement, if Vendor or Contingent Worker is unable to account for any Confidential Information, or if the Vendor or Contingent Worker knows or suspects any security breach or other incident has occurred that could compromise the security or integrity of the Confidential Information, the Vendor shall notify the Bank in writing promptly, but in no event more than one business day after the Vendor becomes aware of the unauthorized use or disclosure or loss of Confidential Information.  The Vendor shall take all measures reasonably required by the Bank to recover the information, to mitigate the effects of the unauthorized use or disclosure or loss, to prevent further unauthorized use or disclosure or loss, and to cooperate with the Bank and its agents in any investigation the Bank may undertake.  The Vendor shall also take all measures required by applicable law in response to any unauthorized use or disclosure or loss of personally identifiable information. The Vendor shall bear the costs of all such measures taken or to be taken by the Vendor.

g.  The Vendor agrees that damages are not an adequate remedy for the Vendor's violation of any terms of this confidentiality provision.  If the Vendor violates or threatens to violate any terms of this confidentiality provision, the Bank will have the right to seek injunctive relief to restrain any breach or threatened breach, or to specific enforcement of this provision.  The Vendor shall not contest the Bank's action for equitable remedies on the grounds that damages are an adequate remedy.  The Vendor also agrees it will not seek to have imposed on the Bank any obligation to post a bond or give security as a condition to injunctive relief.  The Bank may seek injunctive or specific performance of this provision in addition to any other remedies that it may have.

h.  Subject to the provisions of paragraph (i), upon the expiration or other termination of this Agreement, or at any other time requested by the Bank, the Vendor shall deliver to the Bank all records, data, information, and other material provided to the Vendor by the Bank or by any other person at the Bank's request, and all Work Product (including work in process) created in the performance of this Agreement.  All records, data, information, and other material to which the Vendor may be given access in connection with this Agreement are and will remain the property of the Bank or third parties from which the Bank obtained such material.  Subject to the provisions of paragraph (i), the Vendor shall return to the Bank, or with the Bank's prior consent, destroy, all tangible copies of Confidential Information in the possession or control of the Vendor, which includes all Confidential Information in the possession of any agent of the Vendor.  The Vendor shall also destroy all intangible copies of Confidential Information in its possession or control.  Confidential Information shall be returned to the Bank within 30 days after expiration, termination, or Bank request, as applicable, using secure methods of delivery approved by the Bank.  If the Vendor destroys material (tangible or intangible) containing Confidential Information, the Vendor will use destruction techniques appropriate for the format of the materials and approved by the Bank, and the Vendor shall certify the destruction to the Bank in writing.  The Vendor shall retain no copies of Confidential Information, including any

Page 9 of 27

DM #55439

CONFIDENTIAL

compilations derived from and allowing identification of Confidential Information, except to the extent permitted by the Bank under paragraph (i).

i.  If the Vendor believes that the return or destruction of any Confidential Information is not feasible, or if the Vendor is required by applicable law or accounting rules to retain a record copy of any Confidential Information for some period of time, the Vendor shall notify the Bank in writing of the conditions that make return or destruction infeasible or that require retention. If the Bank consents to the Vendor's retention of any Confidential Information for the reasons described in the notice, which consent shall not be unreasonably withheld, the Vendor may retain a copy of the Confidential Information, which is to be maintained subject to the protections of this confidentiality provision until the Confidential Information ceases to be confidential, is returned to the Bank, or is destroyed.

j.  The terms of this confidentiality provision shall survive the expiration or other termination of this Agreement and each Work Order indefinitely as to any information until the information becomes public or otherwise ceases to be Confidential Information as defined in paragraph (a) of this provision.

4.5    Warranty of Services.  The Vendor shall at all times exert its best efforts to cause Contingent Workers to perform services diligently and in a professional manner with a level of care, diligence, and technical skill commensurate with the requirements of the services to be performed under the applicable Work Order.   The Vendor shall be responsible for the professional quality, technical accuracy, completeness, and coordination of all services furnished under this Agreement.

4.6    Compliance with Law.  The Vendor shall at all times comply with all federal, state, and local laws and regulations applicable to this Agreement and the performance of services to be provided under any Work Order, including all Employment Laws and all applicable laws related to export controls.  For Contingent Workers employed by the Vendor, the Vendor is solely responsible for confirming the Contingent Workers' eligibility for employment within the United States and maintaining any required documentation confirming such authorization.  The Vendor shall maintain any authorizations, licenses, and permits required by law for the Vendor to operate its business, and the Vendor shall cause Contingent Workers to maintain any authorizations, licenses, and permits required by law for the Contingent Workers to perform services required by Work Orders.  The Vendor shall notify the Bank immediately if any required authorization, license, or permit is terminated for any reason.

4.7    Vendor Background Investigation. Because of the sensitive and confidential nature of information about the Bank's business affairs, operation, and security procedures which the Vendor may be given or have access to during the term of this Agreement, the Bank will conduct background investigations of the Vendor at the Vendor's expense.  In the Bank's sole discretion, the Bank may conduct more than one such background investigation during the term of this Agreement, and such investigations may include, without limitation, researching the Vendor's ownership, credit history, business history, and record of ethical conduct.  If (i) the Vendor fails to cooperate promptly with any such background investigations, or (ii) the Bank determines, in its sole discretion, that the results of any background investigation are not satisfactory to the Bank, the Bank may, at is sole option, terminate this Agreement immediately and without any liability on behalf of the Bank, other than to pay the Vendor for any services that have been properly rendered under this Agreement through the date of termination.  In the event the Bank terminates this Agreement in connection with an unsatisfactory background check, the Bank has no obligation to inform the Vendor of the specific results of the background check or why the Bank determined those results to be unsatisfactory.

DM #55439

CONFIDENTIAL

4.8     Reports. The Vendor shall provide to the Bank such reports regarding the services performed under this Agreement as the Bank may request from time to time.

4.9     Recordkeeping and Audit.

a.  The Vendor shall maintain books and records, including any and all documents and other materials which support or underlie those books and records, including policies and procedures, that relate to this Agreement, the Contingent Workers assigned to provide services to the Bank, the performance of services under this Agreement, and invoices submitted pursuant to this Agreement (collectively, "Records"). The Vendor shall retain Records for the duration of this Agreement and thereafter for a reasonable period, but in no event less than six years after the later of (i) the expiration or other termination of the Agreement or (ii) the date the Vendor last performs services under the Agreement (the "required retention period"). If any compliance review or audit, investigation, or litigation is pending when the required retention period would otherwise end, the Vendor shall continue to retain relevant Records until the compliance review or audit, investigation, or litigation is finally concluded. The Vendor may retain Records in any format, written, electronic, or otherwise, as long as they remain accessible for review and audit during the required retention period.

b.  The Bank shall have the right to review and audit any and all of the Vendor's Records and the Vendor's compliance with this Agreement, including any Work Order. The Bank may review and audit any and all of the Vendor's Records and the Vendor's operation and controls, including, without limitation, the security of the Vendor's information technology and communications systems and the Vendor's compliance with its policies and procedures, to the extent they are essential to the performance of a Work Order or administration of this Agreement (collectively, "Operations"). The Vendor will make available for review or audit Records in whatever form they may be kept and Operations wherever they are performed, whether Records or Operations are kept or performed by the Vendor or by the Vendor's agents, representatives, successors, assigns, or any subcontractors. The Bank may conduct reviews or audits using employees, agents, representatives, contractors, or designees of the Bank or the Board of Governors of the Federal Reserve.

c.  The Vendor shall make its Records and Operations available for compliance review or audit within 10 days after written notice by the Bank, and the Vendor will make the Records and Operations available to the Bank for a reasonable time, which shall not be less than five business days. Compliance reviews and audits are to be conducted during normal business hours at the Vendor's office or place of business (or at the place where any off-site Operations occur), and the Vendor shall provide appropriate workspace to the Bank for review of the Records and Operations. The Bank shall use reasonable efforts to conduct its compliance review or audit in a manner that limits disruption to the Vendor's operations. In the event that the Vendor's office or place of business is not available, the Vendor shall make the Records available for audit at the Bank's location at a time that is convenient for the Bank. The Vendor shall bear the expense of compiling Records for review and audit, and the Vendor shall allow the Bank to make copies of all Records the Bank determines necessary or useful. Otherwise, the Bank shall conduct compliance reviews and audits at the Bank's expense. The Vendor shall provide reasonable assistance at no extra charge. In addition, the Vendor shall allow and facilitate reasonable access by the Bank to current and former employees of the Vendor for purposes of discussing matters pertinent to the performance of this Agreement.

DM #55439

CONFIDENTIAL

Confidential

FRBNY_Nguedi_000323

d.  The Bank may share the results of any audit conducted pursuant to this audit provision, including any copies of Records, as it deems appropriate. This audit provision shall not be construed to limit, revoke, or abridge any other rights, powers, or obligations to audit the Vendor that the Bank or any other entity may have by any applicable state or federal law or regulation, whether those rights, powers, or obligations are express or implied.

e.  In addition to the compliance review described in this section 4.9, the Bank may during the term of this Agreement periodically review the financial condition of the Vendor. To facilitate the Bank's financial review, the Vendor shall provide to the Bank upon its request copies of the Vendor's financial statements (including balance sheets and related statements of income and cash flow) for its three most recent fiscal years, in each case showing the financial condition of the Vendor as of the close of the fiscal year and the results of operations during such year which have been audited by independent public accountants and include the accountants' opinion that the financial statements fairly present the financial condition of the Vendor. If the Vendor's financial statements are publicly available, the Vendor may satisfy this requirement by directing the Bank to the source where they are made generally available to the public.

4.10   Indemnification. In addition to the indemnities provided in sections 4.2(c) and 7.7, the Vendor shall defend, indemnify, and hold the Bank, its officers, employees, and agents, harmless from all liability, loss, cost, damage, penalties, and expense (including fees of attorneys and other professional advisors) arising out of or resulting from:

a.  The performance of services under this Agreement if the liability loss, cost, damage, penalties, or expense is (i) attributable to bodily injury, sickness or disease, or death; fraud or theft; or injury to, or loss or destruction of, property (tangible or intangible), including the loss of use of the property; and (ii) caused in whole or in part by a willful or negligent act or omission of the Vendor, any Contingent Workers or other Vendor employees, any Vendor agents or representatives, or anyone for whose acts any of them may be liable; or

b.  Any breach of this Agreement by the Vendor.

This indemnity shall not apply, however, to the extent the liability, loss, cost, damage, penalty, or expense results solely from the Bank's negligence, as determined by a final, non-appealable court order. The Vendor shall defend at the Vendor's own expense any third-party suit, claim, or proceeding for which the Bank may be indemnified under this section. The Bank shall be entitled, at the Bank's option, to control or participate in the defense of any such third-party suit, claim, or proceeding.

4.11   Conflict of Interest.

a.  For purposes of this Agreement, a conflict of interest exists for the Vendor when any other business relationship or financial interest of the Vendor or any of the Vendor's directors, officers, affiliates, or employees engaged in providing services to the Bank could impair (i) the Vendor's objectivity or impartiality in performing services for the Bank, or (ii) the quality of the Vendor's services to the Bank. This provision is not intended and is not to be interpreted to prohibit the Vendor from performing the same or similar services for clients of the Vendor other than the Bank.

b.  As of the Effective Date of this Agreement and upon signing any Work Order, the Vendor warrants to the Bank that no conflict of interest exists that has not been disclosed to the Bank in writing. If circumstances that create or could create a conflict of interest arise during any Work Order in effect or exist or arise when the Vendor submits candidates for a new Bank assignment,

Page 12 of 27

DM #53439

CONFIDENTIAL

the Vendor shall notify the Bank promptly of the conflict or potential conflict and take such steps as the Bank may request to avoid, neutralize, or mitigate it. If the Bank determines that the conflict of interest cannot be avoided, neutralized, or mitigated in a manner satisfactory to the Bank, the Bank may terminate this Agreement or the affected Work Order upon notice to the Vendor.

c. Without limiting the Vendor's obligations under paragraph (a) or (b) of this section: the Vendor shall not present to the Bank as a candidate any individual (i) with whom the Vendor or any of its officers, directors, or Vendor personnel assigned to perform services for the Bank has any business or personal relationship unless the Vendor discloses to the Bank in writing the details of the relationship or (ii) for whom the Vendor has been or is to be paid to assist with the individual's job search or placement (other than the fees the Vendor would be paid by the Bank under this Agreement), whether such payment or commitment to pay was made by the individual or by a third-party.

d. The Vendor agrees to abide by and has provided the Bank with its internal conflict of interest procedures. Such procedures are designed to, among other things: identify any material conflicts of interest between the Vendor and the Bank; require reporting of any conflicts of interest between the Vendor and the Bank that develop during the course of this Agreement; and prevent the use of Confidential Information for any purposes not specified in the Agreement.

e. The Vendor's policy for safeguarding Confidential Information is designed to ensure that (i) personnel assigned to the management of the Bank's account or with access to the Bank's information not share any Confidential Information with any other personnel of the Vendor, and (ii) any information related to any Confidential Information is not shared with personnel of any affiliate or any parent corporation of the Vendor, regardless of any more permissive information security policies that may otherwise be standard for the Vendor's personnel. The Vendor has procedures in place that direct its staff to refrain from accessing the Bank's information except for the purposes of providing the services specified in this Agreement and to refrain from sharing the Bank's information with any other employees of the Vendor or employees of any of the Vendor's affiliates both during and after their engagement with the Bank.

f. The Vendor acknowledges that Bank employees adhere to a Code of Conduct, a copy of which is posted on the "Vendor Information" page of the Bank's public website. Among other things, the Code of Conduct prohibits Bank employees from using their Bank positions for private gain and from soliciting or accepting gifts, meals, and other things of value from persons doing business, or seeking to do business, with the Bank. The Vendor shall conduct its business with the Bank in a manner that would not, in any way, cause any Bank employee to violate the Code of Conduct or create any appearance of impropriety by a Bank employee.

**5.    Contingent Worker's Responsibilities**

5.1    <u>Vendor Notice to Candidates</u>.  The Bank requires Contingent Workers to comply with various rules and procedures applicable (a) generally to individuals the Bank allows to access Bank facilities, information systems, and nonpublic information and (b) to non-employees who perform services for the Bank. The Vendor shall inform candidates of the Bank requirements identified in this article 5 and propose to the Bank only candidates who are willing to abide by the Bank's rules and procedures applicable to Contingent Workers.

Page 13 of 27

DM #55439

**CONFIDENTIAL**

Confidential

5.2     Background Check.  Each Contingent Worker and those candidates the Bank accepts to perform services at the Bank shall cooperate with the Bank to complete background checks as further described in section 2.5 of this Agreement.

5.3     Nondisclosure and Assignment of Rights.  Each Contingent Worker shall execute and deliver to the Bank prior to beginning any assignment a nondisclosure agreement and assignment of rights in the form then required by the Bank.  A copy of the nondisclosure and assignment agreement required by the Bank as of the date of this Agreement is attached as Exhibit C.  The Bank may revise its form of nondisclosure and assignment agreement from time to time, and it is a condition of Contingent Workers assignment to the Bank that they sign the form of such agreement in effect when they are assigned to the Bank.

5.4     Rules and Procedures.  Each Contingent Worker assigned to perform services for the Bank will comply with all Bank rules and procedures in effect from time to time applicable (a) generally to individuals the Bank allows to access Bank facilities, information systems, and nonpublic information and (b) to non-employees who perform services for the Bank, including, without limitation, any rules of conduct, conflict of interest rules, and information security policies and training the Bank may require.

5.5     Location.  Each Contingent Worker will perform all services for the Bank at Bank facilities in the location set forth in the Work Order.  Contingent Workers may not work remotely unless expressly authorized in writing by the Bank Project Leader identified in the applicable Work Order.  The Bank and Vendor agree that such an authorization given in an email message addressed to the Contingent Worker will be considered written authorization notwithstanding any other provision of the Agreement.  Any Contingent  Worker granted permission by the Bank to work remotely shall be required to execute and deliver to the Bank prior to beginning any remote assignment a telecommuting agreement in the form then required by the Bank.

5.6     Time Reporting.  Each Contingent Worker will comply with any applicable Bank procedures for reporting time spent providing services to the Bank.  Time reporting required by the Bank is in addition to any time reporting the Vendor may require.

5.7     Off-Boarding.  Each Contingent Worker, upon completing an assignment for the Bank, when removed from the Bank for any reason, or otherwise at the Bank's request, shall turn over to the Bank the Contingent Worker's Bank-issued identification and all documents, records, and devices then in the Contingent Worker's possession or control that the Contingent Worker created or was given in connection with the Contingent Worker's assignment for the Bank.  Each Contingent Worker shall also execute and deliver to the Bank such documents as the Bank determines necessary or useful to perfect its rights in all Work Product of the Contingent Worker.

6.      The Bank's Responsibilities.  The Bank will provide each Contingent Worker access to the applicable Bank facility during the Bank's normal business hours (or at times outside the Bank's normal business hours with the prior written consent of the applicable Bank Project Leader), and workspace, equipment, and supplies suitable for the tasks to be performed by the Contingent Worker.  Access to the Bank will be provided subject to the Contingent Worker's compliance with the Bank's security requirements.

7.      Ownership of Work Product

7.1     Bank Owns All Work Product.  All work product of any type created by Contingent Workers while they are engaged to perform services for the Bank under this Agreement (collectively, "Work Product") shall be the exclusive property of the Bank from the time it is created.  Work Product includes

Page 14 of 27

DM #55439

CONFIDENTIAL

work completed and work in process. The Vendor agrees that all Work Product is work made for hire to the full extent such designation is permitted under applicable law.

7.2     Assignment by the Vendor.   The Vendor hereby assigns to the Bank the entire right, title, and interest for the entire world, in and to all Work Product created by any Contingent Worker while assigned to perform services for the Bank, including, without limitation, writings, formulas, designs, reports, software, processes, architecture, models, drawings, photographs, and design inventions and other inventions or improvements made, conceived, or reduced to practice or authorized by the Vendor or the Vendor's employees, whether created or conceived solely or jointly with others, in relation to the work performed under this Agreement or with use of information, materials, or facilities of the Bank received or used by the Contingent Worker during the period in which the Contingent Worker performs services for the Bank under this Agreement.

7.3     Supporting Rights.   The Vendor has acquired, or shall acquire, from each of its employees who perform services for the Bank under this Agreement the necessary rights to convey ownership of all Work Product to the Bank as provided in this article 7.

7.4     Further Assurance.   The Vendor shall, without additional charge to the Bank under this Agreement, sign, execute, and acknowledge, or cause to be signed, executed, and acknowledged, any and all documents (prepared by the Bank at its expense) and perform or cause to be performed such acts as may be necessary, useful, or convenient for the purpose of securing to the Bank or its nominees, patents, trademarks, copyrights, or other proprietary rights, as appropriate, throughout the world upon all Work Product the Bank is to acquire under this Agreement.   If the Bank is unable for any reason to secure the Vendor's signature to any lawful or necessary document, including any application, assignment or other document, the Vendor irrevocably appoints the Bank and the Bank's duly authorized officers and agents as the Vendor's attorney-in-fact to execute and file the document, and to do all other lawfully permitted acts to further the procurement and maintenance of patents, trademarks, copyrights, and other proprietary rights with the same legal force and effect as if executed by the Vendor.

7.5     No License to Vendor.   Neither the Vendor nor any of its officers, employees, contractors, agents, or representatives may use, reproduce, manufacture, or distribute any Work Product.

7.6     No Adverse Claims.   During and after the term of this Agreement, the Vendor shall not assert or permit any other person or entity to assert against the Bank, its officers, employees, directors, agents, representatives, vendors, or customers, mediate or immediate, any intellectual property or other proprietary rights the Vendor or such other person or entity may have because of any use, reproduction, manufacture, distribution, or performance of any Work Product, in whole or in part, anywhere in the world in any medium or for any purpose.

7.7     Infringement Indemnity.   The Vendor shall defend, indemnify and hold the Bank, its officers, employees, directors, and agents, harmless from all liability, loss, cost, damage, penalties, and expense (including fees of attorneys and other professional advisors) resulting from any suit, claim, proceeding, or investigation asserted or undertaken against the Bank or any of its officers, employees, directors, or agents, alleging that any of the Work Product or services provided by any Contingent Worker infringe a patent, trademark, copyright, or other proprietary right, or constitute misuse of a trade secret or confidential information belonging to a third party.   The Vendor shall defend at the Vendor's own expense any such suit, claim, or proceeding.   The Bank shall be entitled, at the Bank's option, to control or participate in the defense of any such suit, claim, or proceeding.   If the Bank's use of any Work Product or services is enjoined, the Vendor shall, at its own expense, exercise due diligence to accomplish the following remedies:

Page 15 of 27

DM #55439

CONFIDENTIAL

    b.   Modify such Work Product so that it is not infringing and yet performs in accordance with the Bank's specifications or requirements; or

    c.   Substitute other non-infringing material or services that are acceptable to the Bank.

## 8.    Hiring Contingent Workers; Non-Solicitation

8.1    Contingent Workers.  The Bank may hire a Contingent Worker as an employee of the Bank without incurring any obligation to the Vendor if such employment commences after the Contingent Worker has performed 1,000 billable hours under any assignment to the Bank or after the scheduled expiration date of any Work Order for an assignment of fewer than 1,000 billable hours. The Bank may also hire a Contingent Worker before the Contingent Worker completes 1,000 billable hours of services to the Bank or the scheduled expiration of a Work Order for an assignment of fewer than 1,000 billable hours if the Bank pays the Vendor, at the Vendor's request, a fee as provided in this section.   For purposes of this provision, hours of service are accumulated from the start date of the Contingent Worker's first assignment to the Bank and include all days and hours of service to the Bank under a Vendor assignment. The fee will be calculated as a percentage (set forth in the table below) of the base annual salary to be paid by the Bank to the Contingent Worker when employed by the Bank, and the fee will be payable within 30 days after the Contingent Worker commences work as an employee of the Bank unless no request for payment is made by the Vendor during that 30-day period.

| Number of hours the Contingent Worker performs services under a Work Order before the Contingent Worker is hired as a Bank employee: | |
|---|---|
| Less than 168 billable hours | 15% |
| At least 168 billable hours, but not more than 333 billable hours | 12% |
| At least 333 billable hours, but not more than 500 billable hours | 10% |
| At least 500 billable hours, but not more than 667 billable hours | 8% |
| At least 667 billable hours, but not more than 1,000 billable hours | 5% |

8.2    Nonsolicitation of Bank Employees.  During the term of the Agreement and for a period of six months after the Agreement expires or is terminated, the Vendor will not hire or solicit for employment (directly or by an agent) any Bank employee or advise or assist any other party to hire or solicit for employment any Bank employee.

## 9.    Term

9.1    Term.  The term of this Agreement begins on the Effective Date set forth in the preamble and expires on December 31, 2018, unless terminated earlier in accordance with this Agreement.   Any Work Order made during the term of this Agreement may continue beyond the scheduled expiration of the Agreement through the Expected End Date set forth in the Work Order, and this Agreement will continue during that period as to the Work Order. No new Work Order may be made under this Agreement after the scheduled expiration date, as the scheduled expiration may be extended by renewal.

9.2    Renewal.  The parties may agree in writing to renew this Agreement for successive 12-month terms.

DM #55439

CONFIDENTIAL

10. **Termination by the Bank**

10.1 _Agreement._ The Bank may terminate the Agreement upon notice to the Vendor given at any time, for any reason or for no reason. The Bank's termination of the Agreement will be effective on the date specified by the Bank in its termination notice. The Bank's termination of this Agreement will have the effect of ending this Agreement and all Work Orders as of the date and time specified in the Bank's notice.

10.2 _Work Orders._ The Bank may terminate any Work Order upon notice to the Vendor given at any time, for any reason or for no reason. The Bank's termination of a Work Order will be effective on the date specified by the Bank in its termination notice for that Work Order. The Bank's termination of a Work Order will have the effect of ending that Work Order as of the date and time specified in the Bank's notice. The Agreement and other Work Orders will continue in effect according to their respective terms.

10.3 _Performance Deficiencies._ If the Bank terminates any Work Order within the first two weeks of a Contingent Worker's assignment because of the Contingent Worker's nonperformance or unacceptable performance, including the Contingent Worker's failure to comply with applicable Bank policies and procedures, the Bank shall have no obligation to pay the Vendor with respect to that Work Order. The Vendor will be solely responsible for the compensation payable to the Contingent Worker for that period of service.

10.4 _Remedies for Breach._

   a. If the Bank terminates this Agreement or any Work Order as a result of a Contingent Worker's unacceptable performance other than as described in section 10.3, the Bank shall be entitled to recover from the Vendor, upon demand, an amount equal to any fees paid by the Bank under the Work Order covering the Contingent Worker. The Bank may also recover from the Vendor any additional cost the Bank may incur to complete the services to have been performed by the Contingent Worker, including, without limitation, the cost to retain an employee or other temporary contract labor.

   b. If the Bank determines that the Vendor has breached its obligations under this Agreement but does not terminate the Agreement, the Bank may require the Vendor to cure the breach within a reasonable time (not to exceed 30 days) and submit to the Bank a plan of monitoring and reporting that the Vendor determines necessary and appropriate for the Vendor and Contingent Workers to comply with this Agreement and the requirements of any Work Order.

   c. The remedies set forth in this Agreement are not exclusive. The Bank reserves its right to seek damages and exercise any other remedies it may have available to it at law or in equity for any breach of this Agreement by the Vendor.

10.5 _Payment Following Termination Not for Breach._ If the Bank terminates this Agreement or any Work Order for the Bank's convenience and not for a reason described in sections 10.3 and 10.4, the Bank shall pay the Vendor for services performed by the affected Contingent Workers through the termination date specified in the Bank's termination notice.

11. **Termination by the Vendor**

11.1 _Worker Becomes Unavailable._ The Vendor must notify the Bank promptly of any condition or event that may cause a Contingent Worker no longer to be employed by the Vendor or to become otherwise unavailable to continue an assignment for the Bank for reasons beyond the reasonable control

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000329

of the Vendor. Under those circumstances, the Vendor may terminate the Work Order under which the affected Contingent Worker is assigned to the Bank.

11.2    No Other Early Termination.  Except as provided in Section 11.1, the Vendor may not terminate this Agreement or any Work Order.

12.    **Removal of Contingent Workers**

12.1    Ordinary Removal.  Upon the expiration or termination for any reason of any Work Order, the Bank will terminate and disable the Contingent Worker's access to Bank facilities, systems, and information.  The Vendor shall notify the Contingent Worker of the expiration or termination of the Contingent Worker's Bank assignment.  The Bank does not assume any responsibility for communicating with any Contingent Worker about a decision to remove the Contingent Worker from an assignment at the Bank.  The Vendor shall cause the Contingent Worker to comply with all Bank off-boarding procedures then in effect.  The Bank may withhold payments to the Vendor with respect to the expired or terminated Work Order until all off-boarding procedures have been completed.  The Vendor acknowledges and agrees that the Bank's withholding of fees as provided in the immediately preceding sentence does not relieve the Vendor of obligations it may have to pay the Contingent Worker in a timely manner for any period of service prior to completion of off-boarding procedures.

12.2    Immediate Removal.  The Bank may immediately and without prior notice to the Vendor remove any Contingent Worker from Bank facilities and remove access of any Contingent Worker to any Bank systems and information for any reason or no reason.  The Bank shall notify the Vendor of any such removal as soon as practicable.

13.    **Relationship of the Parties.**  In all matters relating to this Agreement, the Vendor acts as an independent contractor to the Bank.  This Agreement does not create, and is not to be interpreted to create, any agency, partnership, joint venture, or other similar relationship between the Vendor and the Bank.  The Vendor acknowledges that it has no authority to assume or create any obligation, express or implied, on behalf of the Bank, and the Vendor agrees that neither the Vendor nor any of its employees, officers, directors, contractors, or agents, will hold out the Vendor, any Contingent Worker, or any other Vendor employee as the Bank's agent, employee, or representative in any other capacity.

14.    Notices

14.1    Method of Delivery.  Any communication intended to affect a party's legal rights or contractual obligations under this Agreement, including, without limitation, notices of breach, requests for consent, amendment, or waiver, the exercise of any option, and any other notice to which the other party has a limited time to respond, are to be given in writing and delivered by hand or by commercial overnight carrier.  Notices will be deemed given when delivered, if by hand, or on the next business day after deposit with an overnight carrier if the notice is marked for overnight delivery and delivery is acknowledged by a signature of the receiving party.

14.2    Address.  Notices are to be sent to the parties at the addresses set forth below or to such other address as a party may designate in writing and send as provided in this section:

DM #55439

CONFIDENTIAL

                                                                                                FRBNY_Nguedi_000330

a. Notices to the Vendor:

> Source of Future Technology, Inc. (SOFT Inc.)
> 333 Hudson Street, Suite 202
> New York, NY 10013
> Attention: Catherine Grubiak, President

b. Notices to the Bank:

> Federal Reserve Bank of New York
> 33 Liberty Street
> New York, NY 10045
> Attention: Contingent Workforce Office

> With a copy sent Attention: Legal Group, Contracts Staff, at the same address.

14.3   Routine Communication. The parties do not intend the formalities of this section to inhibit their routine communication about the subject matter or administration of this Agreement. The parties may communicate about routine matters in any manner they determine to be efficient and effective, including by telephone and electronic mail and through the Managed Service Provider system.

15.   **Publicity**. Neither the Vendor nor any of its officers, directors, employees, contractors, agents, or representatives, shall use the Bank's name or any adaptation or variation of the Bank's name in any advertising, promotional material, or other publication, or otherwise publicize or communicate the Vendor's relationship with the Bank, without the Bank's prior written consent.

16.   **Survival**. The following provisions survive the expiration or termination of this Agreement and each Work Order: section 4.2 (Vendor's Employment-Related Obligations), section 4.4 (Confidentiality), section 4.5 (Warranty of Services), section 4.9 (Recordkeeping and Audit), section 4.10 (Indemnification), article 7 (Ownership of Work Product), section 8.2 (Nonsolicitation of Bank Employees), section 10.3 (Performance Deficiencies), section 10.4 (Remedies for Breach), section 12.1 (Off-Boarding), section 15 (Publicity), article 17 (Miscellaneous), and any other obligation of either party, which by its nature, cannot be fully performed prior to the expiration or termination of this Agreement. Each Contingent Worker's obligations under article 5 shall continue as long as the Contingent Worker performs services for the Bank under any Work Order.

17.   **Miscellaneous**

17.1   **Applicable Law**. The parties agree that this Agreement shall be governed by, and construed in accordance with, the laws of the United States and, in the absence of controlling federal law, the laws of the State of New York even if applicable conflict of law rules indicate the laws of a different jurisdiction should control. All claims under this Agreement shall be subject to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York, and the parties consent to the personal jurisdiction of that court.

17.2   Superseding Effect. Except as set forth in section 17.3 below, this Agreement supersedes all oral and written agreements, if any, between the parties, and constitutes the entire agreement between them, with respect to the assignment of Contingent Workers by the Vendor to the Bank. The following exhibits, each as amended from time to time, form an integral part of this Agreement as if set forth fully in this Agreement: Exhibit A (Form of Work Order), Exhibit B (Form of Vendor Employment Status Certification), and Exhibit C (Form of nondisclosure and assignment agreement). A conflict between the

DM #55439

CONFIDENTIAL

Vendor's obligations to the Bank under this Agreement and the Vendor's obligations to the Managed Service Provider under any agreement between the Vendor and the Managed Service Provider does not excuse the Vendor's performance under this Agreement. The Vendor shall notify the Bank promptly in writing of any such perceived conflict and cooperate with the Bank and the Managed Service Provider to clarify the Vendor's obligations to the Bank and the Managed Service Provider so as to avoid any conflict.

17.3    Prior Work Orders. The parties acknowledge that the Bank may have issued one or more work orders to the Vendor to assign Vendor employees as temporary contract labor pursuant to a prior agreement between the Bank and the Vendor (a "Prior Agreement"). In the event there are any work orders still in effect under a Prior Agreement at the Effective Date of this Agreement, such work orders shall continue through their scheduled expiration and shall be governed by the terms of the Prior Agreement.

17.4    Section Headings. The section headings are provided for the convenience of the parties and are not to be construed as influencing the meaning of any section of this Agreement in any manner.

17.5    No Assignment or Subcontracting. This Agreement is for the personal services of the Vendor through its employees specifically assigned as Contingent Workers under Work Orders. The Vendor may not transfer or assign this Agreement, or subcontract the performance of any services under this Agreement, without the prior written consent of the Bank. The Vendor may not propose to the Bank as a candidate any individual employed or retained by another staffing firm or entity under a contract between the Vendor and the other staffing firm or entity. The Bank may give or withhold its consent to any proposed transfer, assignment, or subcontract in its sole discretion. Any transfer, assignment, or subcontract made by the Vendor without the Bank's consent is void.

17.6    Amendment. Neither this Agreement nor any Work Order may be modified or amended except in a writing signed by both parties.

17.7    No Waiver. No failure or delay by either party to exercise any right or remedy it may have under this Agreement shall be deemed a waiver of such right or remedy. A waiver by either party of any covenant, condition, or agreement to be performed by the other shall not be construed to be a waiver of any succeeding breach of the same or any other covenant, condition, or agreement.

17.8    Severability. The Bank and the Vendor agree that if any term or provision of this Agreement or any Work Order is found to be illegal or unenforceable, such term or provision shall be deemed stricken and the remainder of this Agreement or Work Order shall remain in full force and effect. Either party having knowledge of such term or provision shall promptly inform the other of the presumed defect.

17.9    Effective Date. This Agreement and any Work Order is effective only when it is executed by each party.

17.10    Counterparts. The parties may sign this Agreement in any number of counterparts. When each party has delivered at least one signed counterpart, the counterparts, taken together, constitute one agreement and each counterpart of the Agreement is to be considered an original. If this Agreement is signed in counterparts, neither party is bound until each party has signed a counterpart. Counterparts may be exchanged in any file format that maintains the integrity of the text of the agreement and the signatures affixed to the agreement.

DM #55439

CONFIDENTIAL

Confidential    FRBNY_Nguedi_000332

18.    Workforce Inclusion.  The Vendor shall use good faith efforts to ensure, to the maximum extent possible, the fair inclusion of women and minorities in the Vendor's workforce.  The Vendor will maintain sufficient documentation that permits the Bank to determine whether or not the Vendor has made a good faith effort in this regard.  The Vendor understands that the Bank's Office of Minority and Women Inclusion may make a determination about whether the Vendor has made the required good faith effort and may recommend termination of the Agreement if the Bank's Office of Minority and Women Inclusion determines that the required good faith effort has not been made.   The Bank may proceed to terminate this Agreement based on that recommendation.  Any termination of this Agreement by the Bank pursuant to this provision shall be without cost or penalty to the Bank (except payment for goods delivered or services rendered prior to the termination date) notwithstanding any other provision of this Agreement to the contrary.

The Vendor's contact for follow-up by the Office of Minority and Women Inclusion is:

| Name: | Catherine Grubiak | | |
| Title: | President | | |
| Email: | cgrubiak@softinc.com | Phone: | 212-633-1515 |

AGREED:                                            AGREED:

SOURCE  OF  FUTURE  TECHNOLOGY,   FEDERAL RESERVE BANK OF NEW YORK
INC.

By: *Catherine Grubiak*                     By: *Meauul M.*

Name: Catherine Grubiak                     Name: SUSAN W. MINK

Title: President                            Title: EVP HR

Date: 3|23|15                               Date: 3|27|15

Approved as to form
FRBNY Legal Function
Date: 3/27/15

Page 21 of 27

DM #55439

CONFIDENTIAL

**EXHIBIT A**
**TO MASTER STAFFING AGREEMENT**

<u>Form of Work Order</u>

**WORK ORDER**

Work Order No._____

This Work Order dated _____ is made pursuant to the Master Staffing Agreement between the Federal Reserve Bank of New York (the "<u>Bank</u>") and _____ (the "<u>Vendor</u>") dated _____ , 20___ . The terms and conditions of the Master Staffing Agreement are incorporated by reference into this Work Order. This Work Order constitutes a contract for services of a contingent worker as follows:

<u>Bank Information</u>

| Bank Group | | Project | |
|---|---|---|---|
| Bank Business Owner | | | |
| | (name) | (telephone) | (email address) |
| Bank Project Leader | | | |
| | (name) | (telephone) | (email address) |

<u>Temporary Position Information</u>

| Position | | | Location | | |
|---|---|---|---|---|---|
| Expected Start Date | | | Expected End Date | | |
| | | | | | |
| ☐ Time and Materials | | Total Cost | $   .00 | | |
| Rate | $   .00 | ☐ Hourly | ☐ Daily | ☐ Weekly | Frequency |
| | | | | | |
| ☐ Fixed | | Total Cost | $   .00 | | |
| Payment Milestones | | <u>$ or %</u> | <u>Milestone</u> | | |
| | | | | | |
| | | | | | |
| | | | | | |

<u>Contingent Worker Assigned</u>

| Contingent Worker | |
|---|---|
| Required Skills | |
| Position Duties | |
| Work Schedule | |

Page 22 of 27

DM #55439

**CONFIDENTIAL**

The Vendor represents and warrants to the Bank with respect to the Contingent Worker:

1.      The Vendor has made a commercially reasonable effort to verify the education and experience of the Contingent Worker as described in the Contingent Worker's resume provided to the Bank.

2.      Based on the Contingent Worker's education and experience, the Contingent Worker possesses the required skills requested by the Bank.

3.      The Contingent Worker is legally authorized to work in the United States.

4.      The Contingent Worker is an employee of the Vendor.

5.      As indicated **by the Vendor's initials**:

(initial only one)

_____   The Contingent Worker is an employee employed in a bona fide executive, administrative, or professional capacity, as defined in 29 C.F.R. Part 541, or is a computer employee as described in 29 C.F.R. § 541.400.

_____   The Vendor agrees that it will ensure the Contingent Worker will be paid the minimum required rates and provided the minimum required benefits in accordance with the Act and the Regulations (as those terms are defined in the Agreement), and the Vendor shall otherwise comply with the requirements of the Act and the Regulations.  A currently effective wage determination notice is attached to this Work Order as Exhibit 1.

**AGREED:**                                    **AGREED:**

[vendor name]                                  **FEDERAL RESERVE BANK OF NEW YORK**

By:_____                     By:_____

Name:_____                     Name:_____

Title:_____                    Title:_____

Date:_____                     Date:_____

                                               Approved as to form
                                               FRBNY Legal Function
                                               _____Date:_____

Page 23 of 27

Confidential

FRBNY_Nguedi_000335

**EXHIBIT B**
## TO MASTER STAFFING AGREEMENT

**Form of Vendor Employment Status Certification**

### VENDOR CERTIFICATION OF CANDIDATE EMPLOYMENT STATUS

To:   The Federal Reserve Bank of New York

Re:   Master Staffing Agreement dated _____, 20___ between _____ (the "Vendor") and the Federal Reserve Bank of New York (the "Bank").

Candidate:_____

 In connection with the Vendor's proposal to assign the identified Candidate to the Bank, the Vendor certifies to the Banks as follows:

a. The Candidate is an employee of the Vendor; and

b. As indicated **by the Vendor's initials**:

**(initial only one)**

_____   The Candidate is an employee employed in a bona fide executive, administrative, or professional capacity. as defined in 29 C.F.R. Part 541, or is a computer employee as described in 29 C.F.R. § 541.400.

_____   The Vendor agrees that, if the Bank selects the Candidate for assignment to a temporary position, the Vendor will ensure the Candidate will be paid the minimum required rates and provided the minimum required benefits in accordance with the Act and the Regulations (as those terms are defined in the Agreement), and the Vendor shall otherwise comply with the requirements of the Act and the Regulations.  A currently effective wage determination notice has been provided by the Bank to the Vendor and is part of Work Order covering the Candidate's assignment.

The individual signing this certification holds the position indicated below his/her signature and is authorized to make this certification on behalf of the Vendor.

[vendor name]

By:_____
Name:_____
Title:_____
Date:_____

Page 24 of 27

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000336

EXHIBIT C

TO MASTER STAFFING AGREEMENT

Form of Federal Reserve Bank of New York Nondisclosure Agreement

FEDERAL RESERVE BANK OF NEW YORK NONDISCLOSURE AGREEMENT

I, the individual named below, am employed by a vendor or staffing firm used by the Federal Reserve Bank of New York (the "*Bank*"). In consideration of my access to the Bank facilities, systems, and information I need to provide services for my employer at the Bank, and for any other good and valuable consideration received by me, the sufficiency of which I hereby acknowledge, I represent to and agree with the Bank as follows:

1.   Confidential Information.

1.1   "Confidential Information" means all nonpublic information about the Bank, its facilities, systems, business and operations, the Board of Governors of the Federal Reserve System (the "Board") and other Federal Reserve Banks ("Reserve Banks"), and any Bank customer that I am given, learn, or observe in connection with my services for the Bank. "Confidential information" includes, without limitation, information and materials about any data processing and information technology systems, applications, procedures, policies, and standards of any Reserve Bank or the Board; the physical and information security arrangements of any Reserve Bank or the Board; economic data; financial, statistical, and personnel data about member banks of the Federal Reserve System, foreign central banks, international organizations, and other financial institutions; and financial, statistical, personnel, planning, and similar information relating to the past, present, or future activities of any Reserve Bank or the Board. "Confidential Information" does not include the published literature of any Reserve Bank or other Reserve Bank information which is posted on a public website of a Reserve Bank or otherwise made generally available to the public free of nondisclosure restrictions; or information I had prior to my assignment to provide services for the Bank if the information is not subject to other any nondisclosure restrictions in favor of the Bank and if I can document that I had the information before the start of my assignment.

1.2   I will keep Confidential Information in strict confidence and use Confidential Information only to perform services for the Bank. In the Bank, I will discuss and share Confidential Information only with other individuals who have a need to know the information to perform their responsibilities for the Bank. Those individuals may be Bank employees or employees of Bank contractors if the contractor personnel have been specifically identified to me or my employer by a Bank employee who is supervising or managing the project for which I am providing services (a "*Bank Project Leader*"). I will not use, discuss, or share Confidential Information with anyone outside the Bank unless I am doing so with the express prior approval of a Bank Project Leader.

1.3   I will not remove any Confidential Information from the Bank, physically or by use of any information technology or communication system, unless I am doing so with the express prior approval of a Bank Project Leader and according to the terms of the approval. At any time upon request by a Bank Project Leader or Bank officer, I will return any Confidential Information I then have in my possession or control and cease to use any Confidential Information to which I then have access. When my assignment at the Bank ends, I will deliver to a Bank Project Leader all documents, records, and devices in my possession or control which I have created or been given in connection with my assignment. If I have any

Page 25 of 27

DM #55439

CONFIDENTIAL

questions about documents, records, or devices I am asked to turn over to the Bank Project Leader, I will refer those questions to my employer to resolve with the Bank.

1.4   If I lose any Confidential Information, disclose any Confidential Information other than as permitted by this Agreement, or have any Confidential Information stolen from me, I will immediately notify a Bank Project Leader. I will provide to the Bank any information I have about the circumstances of the loss, unauthorized disclosure, or theft, and I will cooperate with the Bank to recover the Confidential Information and to mitigate any adverse consequences of the loss, disclosure, or theft. I agree that my commitment to cooperate with the Bank includes, without limitation, providing the Bank access to any locations, structures, systems, and devices within my control from which the Confidential Information was lost, stolen, or shared or accessed without authorization.

1.5   I acknowledge and agree that my obligations under this article 1 continue indefinitely, meaning they continue while I am engaged to provide services to the Bank and after my engagement ends (even if I am no longer employed by the vendor or staffing firm that assigned me to work at the Bank). When information ceases to be Confidential Information, that particular information will no longer be subject to the restrictions of this Agreement. Confidential Information ceases to be confidential only under the following circumstances: a Reserve Bank publishes the information or releases it to persons outside the Federal Reserve System free of nondisclosure restrictions or I am able to obtain the information from a person or entity other than a Reserve Bank who has the information lawfully and free of non-disclosure restrictions.

2.   Compliance with Bank Rules. I understand that this Agreement does not modify or replace or excuse me from complying with any rules or policies of the Bank that apply to individuals given access to the Bank's facilities, information, or information technology and communications systems. This Agreement supplements those rules and policies. If I have had any prior discussions with any Bank employee about confidentiality that are inconsistent with this Agreement, I understand that those prior discussions are replaced by this Agreement.

3.   Intellectual Property. I understand the Bank has an agreement with my employer about the Bank's ownership of materials I create while I am assigned to perform services at the Bank. I acknowledge and agree that I have no ownership rights or other interests in any materials I create in the course of my assignment for the Bank; those rights are owned and controlled as agreed by my employer and the Bank. If for any reason I have not effectively conveyed to my employer all ownership rights in materials I create while assigned to the Bank, I hereby assign directly to the Bank whatever rights I may have in those materials. I agree that I will, without charge to the Bank, sign any documents (prepared by the Bank at its expense) and do anything else necessary or reasonably requested by the Bank to establish its ownership and to secure for the Bank any patents, copyrights, or other intellectual property rights and protections subsisting in, arising from or related to materials I create alone or working jointly with any other person in the course of my assignment for the Bank.

4.   Injunctive Relief. I acknowledge that damages may be inadequate to protect the Bank against my breach of this Agreement. Therefore, I agree in advance that the Bank shall be entitled to injunctive relief without proof of actual damages and without need to post a bond or other security. I also agree that injunctive relief is not the Bank's exclusive remedy; the Bank retains all other rights and remedies it may have for breach of this Agreement.

5.   Relationship of the Parties. I acknowledge that I am not an employee of the Bank, nothing in this Agreement creates an employment relationship between me and the Bank, I am not eligible to participate in any Bank or Federal Reserve System benefit plan or program. and I am not entitled to any remuneration or privileges from the Bank while on assignment for the Bank or after such assignment has ended for any reason. I am an employee of the vendor named below, and I understand I will be paid for my services by the vendor and not by the Bank.

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000338

6.   Miscellaneous.

6.1   Choice of Law and Jurisdiction.   This Agreement will be governed by federal law, and in the absence of applicable federal law, by New York law without regard to its conflicts of laws principles. The Bank and I agree that any claim arising from or related to this Agreement must be brought only in the Federal District Court for the Southern District of New York. The Bank and I each consent to personal jurisdiction in that court. In furtherance of such agreement and consent, the Bank and I each agree that personal jurisdiction in any action related to this Agreement may be obtained within or outside the jurisdiction of the Federal District Court for the Southern District of New York, and any process or notice of motion or other application to that court in connection with any such action or proceeding may be served upon either of us by registered or certified mail to, or by personal service at, the last known address of the party to be served. The Bank and I each expressly waive any and all rights we may have to make any objections based on jurisdiction or venue to any action brought to enforce this Agreement in accordance with the provisions of this Section 6.1.

6.2   Severability.   If any provision of this Agreement is found by a court of competent jurisdiction to be unenforceable, then such provision shall remain in full force and effect limited to the extent that such court finds it to be enforceable. All other provisions of the Agreement shall remain in full force and effect as written.

6.3   Assignment.   This Agreement will be binding upon my heirs, executors, administrators, and other legal representatives. The Bank may assign this Agreement or any rights it has under this Agreement, without notice to, or consent from, me.

6.4   No Waiver of Rights; Amendment.   No waiver of any breach of this Agreement shall be a waiver of any other breach. No waiver of any right shall be construed as a waiver of any other right. This Agreement may only be modified or amended, and the rights it creates may only be waived, in a writing signed by the party against whom the modification, amendment, or waiver is to be enforced.

6.5   Drafting.   In the event of any dispute arising out of this Agreement, or in any proceeding to enforce any of the terms of this Agreement, I agree that no part of this Agreement shall be construed against the Bank on the basis that the Bank is identified as the drafter of this Agreement.   ·

7.   Effective Date.   This Agreement is effective as of the first day of my assignment to provide services for the Bank.

| Signature | Dated |
|---|---|
| Print       Full | |
| Name | |
| Residence | |
| Address | |
| City/State/Zip | |
| Employed       By | |
| (vendor/staffing firm) | |

Page 27 of 27

DM #55439

CONFIDENTIAL

FRBNY_Nguedi_000339